# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

THOMAS GENTLE,

    Plaintiff,

v.                                                      Civil Case No.: SAG-19-2200

BOOZ ALLEN HAMILTON, INC.,

    Defendant.

## MEMORANDUM OPINION

Plaintiff Thomas Gentle filed a Complaint against his former employer, Defendant Booz Allen Hamilton, Inc. ("Booz Allen"), alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101, *et seq.* ECF 1. Booz Allen has filed a Motion to Dismiss, ECF 14, along with a supporting memorandum of law, ECF 14-1, (collectively, the "Motion"). Gentle filed an opposition ("Opposition"), ECF 16, and Booz Allen filed a reply ("Reply"), ECF 17. I have considered all of the filings, and find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons set forth below, Booz Allen's Motion will be granted, and the Complaint will be dismissed without prejudice.

## I. FACTUAL BACKGROUND[1]

Gentle is a military veteran who suffers from disabilities caused or exacerbated by injuries he sustained on duty in the military. ECF 1, ¶ 11. His disabilities include chronic lower back,

---

[1] The facts are derived from Gentle's Complaint, ECF 1, and are accepted as true for purposes of this Motion. All reasonable inferences to be drawn therefrom are drawn in Gentle's favor.

shoulder, neck, and knee pain, chronic sinusitis, and temporomandibular joint disorder, in addition to headaches, fatigue, and other symptoms. *Id.*

In 2006, Booz Allen hired Gentle as an Associate to perform work on a large defense contract. *Id.* ¶ 12. During his onboarding process, Gentle disclosed his disabilities to Booz Allen, and received accommodations from its disabilities accommodations section, including an ergonomic lumbar chair. *Id.* ¶ 13. During Gentle's 2017 annual performance evaluation, he discussed the challenges and management of his chronic illness. *Id.* In addition, "Gentle's former Career Manager and a former fellow Senior Associate provided written support letters for the VA regarding Gentle's disability symptoms and their impact, with the most recent being within weeks of his joining the new team." *Id.*

In or about 2009, Booz Allen promoted Gentle to Senior Associate, and he became responsible for management of up to fifty employees. *Id.* ¶ 15. In addition, he was named Deputy Program Manager on a contract worth more than $20 million. *Id.* Gentle received positive performance reviews throughout his lengthy tenure at Booz Allen. *Id.* ¶ 16.

The contract on which Gentle served as Deputy Program Manager expired in February, 2018. *Id.* ¶ 17. On or about March 19, 2018, Gentle was assigned to a new team, working as a Program Management Office (PMO) Lead responsible for two sections, one in Virginia and one in San Antonio, Texas. *Id.* ¶ 19. Because Gentle worked in Maryland, most of his communications with his two offices occurred remotely, via telephone, email, or text. *Id.* Beginning on April 1, 2018, Mike Tallent served as Gentle's Career Manager, and Kim Bird became his second-line Manager. *Id.* ¶ 20. Bird did not ever contact Gentle to discuss his disabilities and any real or perceived impact on his performance. *Id.* ¶ 14.

In his new role, Gentle served as Transition Lead, and led a transition of 230 PMO staff from March, 2018 through June, 2018. *Id.* ¶ 21. None of the staff contacted Gentle, publicly or privately, to complain about his behavior or his communications. *Id.* ¶ 22. In fact, Government clients and other staff provided positive feedback to Gentle. *Id.* One member of the San Antonio team, Scedell Kreps, announced that she wanted to leave the PMO office when it was overseen by Gentle. *Id.* ¶ 25. After consulting with Tallent, Gentle spoke directly with Krepps, who explained that she had decided to leave the PMO months before Gentle joined the team, and was concerned that the larger PMO contract would be run out of Virginia, making the San Antonio office into a satellite office. *Id.* Krepps also expressed concern with Gentle's "perceived lack of vision for the PMO." *Id.*

On or about May 10, 2018, Gentle participated in a call with Tallent and Amy Valez, a Deputy Program Manager from San Antonio. *Id.* ¶ 28. Valdez led the meeting, and notified Gentle that she had received negative feedback from team members about Gentle's communication skills. *Id.* Gentle asked Valdez to provide specific examples of conduct leading to the complaints. *Id.* About a week later, Gentle and Valdez met in Virginia. *Id.* When Gentle tried to follow up on the negative feedback, Valdez portrayed it as "not a big deal," but said "she owed it to him to get him the feedback." *Id.*

Bird and Valdez allowed other staff members to interact with Government clients in Texas and Colorado, but questioned Gentle's communication with clients, despite his role as PMO and Transition Lead. *Id.* ¶ 30. Moreover, Jason Vaughn and other staff members were allowed to have in-person meetings with Virginia Government clients, without Gentle's presence. *Id.* Gentle's attempts to travel and meet in person with his PMO staffs were rebuffed or cancelled by Bird. *Id.* ¶ 31. However, Bird permitted other staff members to travel for meetings. *Id.* ¶ 32.

3

On or about June 8, 2018, Gentle received a positive performance review at a meeting that included Bird and other Booz Allen officials.[2] *Id.* ¶ 33. During the evaluation, Gentle was described as having a strength in the area of "Foster Collaboration and Develop Expertise," and was further described "as building a team with a very collaborative team culture that was focused on learning and growing." *Id.* ¶ 16.

On June 11, 2018, Valdez finally provided Gentle with an example of "Gentle's contact with clients without knowledge of or approval," as he had requested at the meeting in May. *Id.* ¶ 34. The example Valdez cited consisted of an incomplete email chain, which did not contain an email reflecting Tallent's approval of Gentle's work. *Id.* Gentle tried to give Valdez the other communications to show more context, but Valdez responded that she "would not be relitigating the issue." *Id.*

On June 13, 2018, Gentle led the final transition call, which announced the successful transition of 230 staff from the VA to the TX contracts. *Id.* ¶ 35. Most of the team's leadership participated on the call. *Id.* After the call, several members of the team expressed satisfaction with the success of the transition. *Id.*

Bird agreed to meet with Gentle in Maryland on or about June 27, 2018, to discuss his work concerns. *Id.* ¶ 36. At the beginning of the meeting, Gentle told Bird that "he was not feeling well and was suffering from a very bad headache and other symptoms," and that "he took some over the counter sinus medication." *Id.* ¶ 37. Gentle continued with the meeting, since Bird had driven from Virginia for the meeting. *Id.* During the meeting, Gentle discussed his vision for the new

---

[2] Gentle's Complaint alleges that immediately after the performance review, "Gentle was then warned that 'they were out to get him.'" *Id.* ¶ 33. In the absence of any factual allegations about who gave the warning or who constituted "they," no inferences can be drawn about the meaning of the warning. Even if one were to assume that "they" included Bird, the allegation does not suggest a causal connection between her being "out to get him" and Gentle's medical conditions.

4

consolidated PMO. *Id.* ¶ 38. Bird showed no interest in his proposals, and told Gentle he was being removed as the PMO Lead. *Id.*

Immediately after his meeting with Bird, Gentle (who was still not feeling well) met with Bird's Deputy, Barry Johnston, and Tallent. *Id.* ¶ 39. In an email before the meeting, Tallent and Johnston had told Gentle that they would meet "to discuss the way ahead for the PMO." *Id.* Instead, Johnston and Tallent issued Gentle a Performance Improvement Plan ("PIP"). *Id.* No Human Resources ("HR") representative attended the PIP meeting. *Id.* ¶ 40. The PIP alleged that Gentle had exhibited "poor communications, a lack of active listening, and a lack of transparency in his actions." *Id.* The PIP explained, "We will review your work and progress toward improving your performance on a regular basis and we will provide you feedback aimed at helping you." *Id.* ¶ 42.

The following morning, on June 28, 2018, Gentle called Krepps in San Antonio. *Id.* ¶ 45. He told her that he would no longer be part of the PMO, and suggested that if she wanted to return to the PMO, she should consider it. *Id.* Krepps indicated that she did not want to return to the PMO, and did not raise any other issues or concerns with Gentle. *Id.* A few hours later, Gentle spoke with the other available members of the PMO team on a teleconference. *Id.* ¶ 46. No one raised any concerns about the phone call with Gentle. *Id.* Gentle also spoke with his former Career Manager about the PIP, who advised Gentle to reach out to Employee Relations. *Id.* ¶ 48. Gentle mentioned that he would be contacting an employment attorney. *Id.*

Later on June 28, Gentle spoke to Sandi Duschene in Booz Allen's HR Office. *Id.* ¶ 49. He told Duchesne that he believed the PIP had been based on "false or insufficient information." *Id.* Duchesne told Gentle that the decision to remove him from the PMO and give him a PIP had been made on June 19, 2018. *Id.* When Gentle mentioned that he would be contacting Employee

5

Relations, Duchesne told him "they don't handle this" because they deal with "discrimination claims." *Id.* ¶ 51. Later that same day, Gentle contacted Employee Relations and spoke with Erica Gipson, who seemed "receptive" to his assertions. *Id.* ¶ 52.

On June 29, 2018, Gentle learned that Kenneth Romaine had replaced him as PMO Lead, and agreed to provide Romaine with the PMO files he would need. *Id.* ¶ 53. Romaine does not suffer from disabilities. *Id.* ¶ 63. Later on June 29, Gentle reached out again to Duschene, who again dismissed Gentle's concerns. *Id.* ¶ 54. He also called Gipson again, and later spoke with another Employee Relations Representative, Monique Mignon. *Id.* ¶¶ 55-56. Gentle told Mignon tht he feared he was being targeted. *Id.* ¶ 56. Mignon promised to talk with a senior HR Manager and get back to Gentle about his concerns with Duschene. *Id.* Another non-disabled employee, Jason Vaughn, had received similar complaints regarding poor communication, but Booz Allen assigned Vaughn a professional coach to help him work through the issues. *Id.* ¶ 62. Vaughn remains employed by Booz Allen. *Id.*

Later that same day, Tallent called Gentle and informed him that Booz Allen was terminating his employment, effective immediately. *Id.* ¶ 57. Tallent cited Gentle's "failure to maintain our values with your reaction to the performance improvement plan." *Id.* Gentle had no opportunity to ask questions or to provide a reaction. *Id.* Gentle later learned that, after his termination, Booz Allen entered a revised PIP, which Gentle was unable to access. *Id.* ¶ 59. He received several complimentary emails from Booz Allen staff, after his termination, about the work he had performed. *Id.* ¶¶ 60-61.

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley*

*Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (*per curiam*).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the

7

minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III. ANALYSIS

To state a claim for discrimination under the ADA, a plaintiff must allege facts to support four elements: (1) he is within the ADA's protected class; (2) he was discharged (or suffered other adverse employment action); (3) he "was performing the job at a level that met his employer's legitimate expectation"; and (4) the adverse employment action "occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am., Inc.*,

252 F.3d 696, 702 (4th Cir. 2001). Here, Gentle's Complaint fails to allege facts to support the fourth required element.

Gentle's allegations regarding Booz Allen's knowledge of his disability consist of (1) the fact that he requested accommodations at the time of his hiring in 2006, and received an ergonomic lumbar chair; (2) the fact that he discussed his chronic illness during his 2017 annual performance allegation; (3) the fact that Gentle's former Career Manager and a former fellow senior assocate "provided written support letters for the VA regarding Gentle's disability symptoms and their impact;" and (4) the fact that he "discussed his disabilities, symptoms, and headaches with some" unnamed "Norfolk, VA team members." ECF 1, ¶ 13. Notably, none of those allegations suggests that any of the decisionmakers Gentle alleges to be responsible for the adverse employment actions he cites (his removal as PMO lead, his issuance of a PIP, and his termination) had any knowledge of his disability. Gentle does not allege that Vasquez, Bird, Johnston, or Tallent participated in his 2006 hiring or his 2017 performance review, or received any of the "written support letters for the VA." *See id.* Gentle alleges that he "discussed his disabilities, symptoms, and headaches with some of the Norfolk, VA team members," *id.*, but does not specify whether any of those members were decisionmakers with respect to the adverse employment actions. In fact, Gentle specifically alleges that Bird never contacted him "to discuss his disabilities and any real or perceived impact on his performance," but does not allege any facts to suggest how Bird would have known to engage in such a conversation. *Id.* ¶ 14. The fact that Gentle worked in a remote location from his supervisors, *id.* ¶ 19, further highlights the need to allege their knowledge of his physical condition, in order to suggest a plausible connection with their adverse decisions.

The only mention of Gentle experiencing any health issues around the time of the employment actions in question is his allegation that on June 27, 2018, when he met with Bird and

9

then received the PIP from Johnston and Tallent, he told Bird "he was not feeling well and was suffering from a very bad headache and other symptoms." *Id.* ¶ 37. Nothing about that discussion indicates that Bird had any knowledge that Gentle's symptoms on June 27, 2018 were anything more than a one-day issue. Moreover, Gentle did not allege telling Johnston or Tallent, during the PIP meeting, that he was feeling unwell.

Absent any indication that any decisionmaker even had knowledge of Gentle's disability, or that his health had impacted his work performance as PMO lead, other than on the single date of the PIP meeting, Gentle has not alleged facts to support any inference that he was subjected to adverse action because of his disability. *See, e.g.*, *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 600 (D. Md. 2013) ("Thus, the employer's mere knowledge of his disability is inadequate by itself to establish the required causal connection for termination more than a year later."). The fact that other Booz Allen employees may have been aware of Gentle's disability years earlier does not suggest any causation with the adverse actions, in the absence of any factual connection between Gentle's disability and his removal as PMO lead, the implementation of his PIP, or his termination.

The district court has discretion to determine whether dismissal pursuant to 12(b)(6) should be with or without prejudice. *See Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) (describing the district court's discretion to dismiss a complaint either with or without prejudice under Rule 12(b)(6)); *see also North Carolina v. McGuirt*, 114 F. App'x 555, 560 (4th Cir. 2004) (per curiam) (weighing whether plaintiffs could "correct the deficiencies" in their complaint when determining whether dismissal should be with or without prejudice). Although the current allegations in the Complaint fail to state a plausible claim of disability discrimination, it is not evident that Gentle would be unable to correct the deficiencies.

Accordingly, I will dismiss the Complaint without prejudice, to allow Gentle to refile his action if he has a factual basis to support a viable claim.

## IV. CONCLUSION

For the reasons set forth above, I shall grant Booz Allen's Motion to Dismiss, ECF 14, and dismiss the Complaint without prejudice. A separate implementing Order follows.

Dated: November 4, 2019

/s/
Stephanie A. Gallagher
United States District Judge